Kenneth H. Brendel (#019003)
Thomas E. Dietrich (#031299)
MANGUM, WALL, STOOPS & WARDEN, PLLC
100 N. Elden St.
Flagstaff, AZ 86001
Tel. 928.779.6951
kbrendel@mwswlaw.com
tdietrich@mwswlaw.com

*Attorneys for Plaintiff Jason Scott Collection, Inc.*

### UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| JASON SCOTT COLLECTION, INC., an Arizona corporation,<br><br>Plaintiff,<br><br>v.<br><br>TRENDILY FURNITURE, LLC, a Texas limited liability company, TRENDILY HOME COLLECTION, LLC, a Texas limited liability company, RAHUL MALHOTRA, an individual, JOHN DOE CORPORATIONS 1-10, and JOHN DOES 1-10,<br><br>Defendants. | Case No. 2:17-cv-02712-JJT<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

The Trendily Defendants do not dispute that they infringed Plaintiff Jason Scott's copyrights and trade dress. Rather, Defendants' only argument against the Court issuing a preliminary injunction is that Trendily's owner, Rahul Malhotra, promises not to infringe again. But after he ignored two cease-and-desist letters, with a full-scale furniture factory in India at his disposal, and with multiple sources of conflicting evidence, Malhotra's word is not enough. The Court should issue the requested injunction to ensure Defendants' infringing actions have in fact ceased and do not recur, and to prevent the

potential loss of evidence.

### A. Defendants Have Failed to Prove Injunctive Relief is Moot

#### 1. Defendants bear a "heavy burden" to show mootness

Defendants claim, based solely on a self-serving declaration from Malhotra, that their infringing activities have ceased, and thus Jason Scott's request for a preliminary injunction is moot. However, "[t]he Court's power to grant injunctive relief survives discontinuance of the illegal conduct." *Barnes v. Healy*, 980 F.2d 572, 579 (9th Cir. 1992). "The burden of demonstrating mootness is a heavy one." *Id*. In the Ninth Circuit, it is "well-settled that an action for an injunction does not become moot merely because the conduct complained of was terminated, *if there is a possibility of recurrence*, since otherwise the defendants would be free to return to their old ways." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1236 (9th Cir. 1999) (internal quotation marks and brackets omitted); *see also Friends of the Earth, Inc. v. Laidlaw Env. Serv., Inc.*, 528 U.S. 167, 189 (2000) (explaining the "stringent" standard for determining if a case has been mooted by defendant's voluntary conduct: "A case might become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior *could not reasonably be expected to recur*") (emphasis added).

In an infringement case, "[t]he fact that the defendant has stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place." *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281-82 (Fed. Cir. 1988) (abrogated on other grounds by *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)). As the Federal Circuit explained: "The argument in such circumstances is very simple. If the defendant be honest in his protestations [to have ceased infringing activities], an injunction will do him no harm; if he be dishonest, the court should place a strong hand upon him." *Garlock*, 842 F.2d at 1282 (quoting *Gen. Elec. Co. v. New England Elec. Mfg. Co.*, 128 F. 738, 740

(2d. Cir. 1904)). Over a century ago, the Second Circuit found, where a defendant claimed to have ceased manufacturing an infringing article, "[t]he probability is that [the court] would follow the practice, so frequently adopted, where the defendant admits past infringement and is shown to be in a position where he can at any time resume, namely, issue the injunction." *New England Elec.*, 128 F. at 740. This logic has been followed by other district courts more recently. *See, e.g. Kanga Care LLC v. GoGreen Enters. LLC*, No. 13-cv-02770, 2014 WL 5889815, *4 (D. Colo. 2014) (issuing a permanent injunction where defendant appeared to have stopped selling infringing products since plaintiff initiated the litigation, but "it is not clear that [defendant] would not begin its infringing activities anew if the Court were to close this case without issuing an injunction against future infringement.").

Voluntary cessation is especially unlikely to moot an injunctive remedy "when the practices are discontinued subsequent, rather than prior, to commencement of the litigation." *State ex rel. Babbitt v. Goodyear Tire & Rubber Co.*, 128 Ariz. 483, 486 (App. 1981) (citing *United States v. Oregon State Med. Soc.*, 343 U.S. 326 (1952)). Further, a copyright defendant's disregard of plaintiff's cease-and-desist letters evidences a substantial threat of future infringement and supports issuance of an injunction. *Broadcast Music, Inc. v. McDade & Sons, Inc.*, 928 F.Supp. 2d 1120, 1136 (D. Az. 2013).

### 2. Defendants' blatant infringement, ignoring cease-and-desist letters, and ability to restart manufacturing anytime they wish all cut against mootness

Here, Defendants do not dispute that they received two cease-and-desist letters from Jason Scott's counsel—in May and June 2017—and continued to sell and market the accused knockoffs after receiving those letters. Defendants offer no defense to their blatantly and intentionally ripping off Jason Scott's copyrighted designs and trade dress. They offer no explanation for how they possibly could have independently developed designs identical to those created long before by Jason Scott's owner, Jason Forsberg

("Forsberg"). They do not dispute stealing Jason Scott's original designs, using them to manufacture knockoffs, and then competing with Jason Scott at cut-rate prices in the very same marketplace.

All Defendants offer is Malhotra's self-serving declaration claiming they have permanently ceased manufacturing the accused products. But, even if that is true, failing to issue an injunction would leave Defendants "free to return to their old ways." *Affordable Media*, 179 F.3d at 1236. Defendants certainly have the means to do so—Malhotra's family owns the factory in India where Trendily furniture is made, and all it would take is to submit another order to start cranking out more knockoffs. [*See* Dkt. 1, Complaint ¶ 37] Nor can Jason Scott take Defendants' promise not to infringe again as a guarantee. Defendants already ignored two cease-and-desist letters telling them, in no uncertain terms, to stop infringing. If Defendants had actually been copying unintentionally as Malhotra claims, they had the chance to cease before facing litigation. Instead, they proved incapable of stopping voluntarily, which is exactly why an injunction from this Court is needed. Otherwise, there is no certainty whatsoever that Defendants will not begin their infringing activities anew the second the Court looks away.

### 3. Multiple other sources contradict Malhotra's claim to have ceased all infringing activities

There is also substantial evidence that contradicts Malhotra's claims to have only produced 18 knockoffs, and that no more accused products are on order or in transit to Trendily. [Dkt. 12, Ex. 1 ¶¶ 12, 14] In late June 2017, Malhotra told Bill Holland, the owner of Hill Country Interiors, that Defendants were awaiting the delivery of two cargo containers of Jason Scott knockoffs, which had been delayed by bad weather at sea. [Dkt. 9, Ex. 1 ("Forsberg Decl.") ¶ 22, Att. B] In early July 2017, Malhotra told Shawn Beach, another retailer, that Defendants were going to offer more Jason Scott knockoffs in the near future. [Dkt. 9, Ex. 7 ("Beach Decl.") ¶ 25] Subsequently, a Trendily sales

representative told Ms. Beach that Defendants had more shipping containers of knockoffs en route to Dallas and were taking pre-orders from retailers. [*Id.* ¶ 26] Then in early August 2017, a retailer in Arizona told Forsberg, who had inquired under a pseudonym about purchasing a Trendily knockoff, that they could get the piece and were "waiting to see if it is in the new containers coming across the ocean." [Forsberg Decl. ¶ 27]

Malhotra has not offered any sales, storage, or shipping records to support any of his claims that Defendants have ceased all infringing activities. Meanwhile, evidence from multiple other sources supports the conclusion that Defendants are continuing to ship accused products into the U.S. from their factory in India. This is all the more reason to issue a preliminary injunction—to put something behind Defendants' promises other than just Malhotra's *ipse dixit*.

**B.     Defendants' Evidentiary Objections are Contrary to the Long-Standing Rule Allowing Greater Flexibility at the Preliminary Injunction Stage**

Rather than arguing Jason Scott has not proven the four factors required to obtain an injunction, Defendants merely object to the evidence Jason Scott has submitted, primarily on hearsay grounds. But "[c]ourts may accept inadmissible evidence, *including hearsay*, in preliminary injunction proceedings if it serves to prevent harm." *Guillen v. Thompson*, No. CV-08-1279, 2009 WL 3241829, *3 (D. Ariz. Oct. 5, 2009) (emphasis added) (citing *Flynt Dist. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)); *see also Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (en banc) (holding "[i]t was within the discretion of the district court to accept this hearsay for the purposes of deciding whether to issue a preliminary injunction."). "[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "Therefore, the Federal Rules of Evidence do not strictly apply to preliminary injunction proceedings." *Disney Enters., Inc. v. VidAngel, Inc.*, 224 F.Supp.

3d 957, 966 (C.D. Cal. 2016) (citing *Marcos*, 862 F.2d at 1363; *Flynt*, 734 F.2d at 1394). "The Court is permitted to consider inadmissible evidence in deciding a motion for a preliminary injunction." *Id*. This flexibility exists because "[t]he urgency of obtaining a preliminary injunction necessitates a prompt determination" and makes it difficult for a party to procure supporting evidence in a form that would be admissible at trial. *Flynt*, 734 F.2d at 1394. Rather than excluding evidence, the Court "has discretion to weigh the evidence as required to reflect its reliability." *Puricle, Inc. v. Church & Dwight Co., Inc.*, 568 F.Supp. 2d 1144, 1147 (C.D. Cal. 2008).

This is exactly the sort of case where evidentiary flexibility is necessary. Events have been fast-moving, as Jason Scott has tried to track down the various locations where Defendants have sold or offered to sell the accused products. Some sales occurred in Texas, making Jason Scott more reliant on declarations from witnesses who cannot come to Arizona to testify on short notice. Further, at least one retailer-witness buys from both Trendily and Jason Scott and was afraid to get involved in this dispute by providing a declaration. Without the power of a subpoena to force production of documents and testimony, Jason Scott had to use other means, such as including in Forsberg's declaration copies of emails sent by that witness to Forsberg. [Forsberg Decl. ¶¶ 21-22, Atts. E, F] In light of long-standing rules allowing consideration at the preliminary injunction stage of evidence that might be inadmissible at trial, such as hearsay, the Court should consider *all* of the evidence submitted by Jason Scott, notwithstanding Defendants' objections.

**C.     Defendants' Intentional Infringement Warrants an Injunction to Preserve the Status Quo During Litigation**

**1.     No dispute that three of four factors favor Jason Scott**

Defendants do not challenge that three of four relevant factors plainly favor issuing a preliminary injunction. Jason Scott has shown it is likely to succeed on the merits of both its copyright and trade dress infringement claims, which Defendants do not dispute.

Indeed, this is a case where the works are "so overwhelmingly identical that the possibility of independent creation is precluded," and Jason Scott would be entitled to summary judgment on at least its copyright infringement claim. *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 987 (9th Cir. 2017). Defendants do not dispute that the balance of hardships tips in favor of Jason Scott, as an injunction would merely prevent Defendants from selling infringing works they are not legally entitled to sell. Nor do Defendants dispute that an injunction would serve the public interests of upholding copyright protections and preventing misappropriation of Jason Scott's skills and resources.

### 2. Jason Scott has sufficiently demonstrated irreparable harm

Defendants argue Jason Scott has not suffered irreparable harm. But that position is based solely on Defendants' evidentiary objections, which should be rejected at this stage, and is contrary to law. The Ninth Circuit recently affirmed a district court's finding of irreparable harm based on evidence an infringer's service undermined the value of plaintiffs' copyrighted works and business model and harmed plaintiffs' goodwill and negotiating leverage with potential customers. *Disney Enters., Inc. v. VidAngel, Inc.*, --- F.3d ---, 2017 WL 3623286, *13 (9th Cir. Aug. 24, 2017). The Ninth Circuit held "the district court did not abuse its discretion in concluding that the loss of goodwill, negotiating leverage, and non-monetary terms in the [plaintiffs'] licenses cannot readily be remedied with damages." *Id*.

Here, Jason Scott has submitted testimony from experienced furniture retailers that knockoffs of Jason Scott's pieces cause consumer confusion and harm Jason Scott's brand by creating the impression Jason Scott's quality has declined. [Dkt. 9, Exs. 2-5] Forsberg testified that Jason Scott does not license its designs or the right to manufacture, distribute, or sell Jason Scott furniture to anyone else, in order to maintain complete control over the quality of its products. [Forsberg Decl. ¶ 10] Jason Scott also carefully

selects its authorized retailer network and restricts the geographic overlap of retailers. [*Id.*] Defendants have struck at the very heart of Jason Scott's business model—selling knockoffs to retailers in close proximity to Jason Scott authorized dealers, and pitching knockoffs to dealers in Jason Scott's network, with the promise that Trendily's copies were identical but less expensive. [*Id.* ¶¶ 18, 22, 25-26, 28; Beach Decl. ¶¶ 4-5] Defendants approached at least two authorized Jason Scott retailers offering to sell Trendily knockoffs that are "identical" but with a shorter lead time and lower in price than Jason Scott originals. [Forsberg Decl. ¶ 22; Beach Decl. ¶ 4-5] Forsberg has given details as to the harm caused by Defendants' actions, in addition to lost sales, including the loss of goodwill and potential need to give concessions to customers who now believe Jason Scott has been overcharging them, and reputational harm caused by customers believing Jason Scott's quality has declined after being confused by a cheaper-looking finish on Defendants' knockoffs. [Forsberg Decl. ¶¶ 28-31] In addition, Forsberg averred Jason Scott has no room to lower its prices to match Trendily. [*Id.* ¶ 30] Therefore, Defendants' sales of accused products—selling Jason Scott's designs for far less than Jason Scott itself can sell them—creates a serious threat to Jason Scott's ongoing viability as a business. Defendants have misappropriated Jason Scott's designs and used them to undermine Jason Scott's business model and damage Jason Scott's reputation and customer goodwill. These are the sorts of irreparable harm the Ninth Circuit found in *VidAngel* supports the issuance of an injunction. 2017 WL 3623286, *13. The Court should issue the requested preliminary injunction to prevent further harm to Jason Scott as this case proceeds.

### D.   Injunctive Relief is Also Warranted to Preserve Evidence

In addition to enjoining infringing activities, Jason Scott has also requested under 17 U.S.C. §503(a) that the Court take custody of all of Defendants' records relating to the manufacture, sale, or receipt of any accused products. As noted above, Malhotra has offered no documentation whatsoever to support his claims that Defendants have ceased

1  infringing. But Defendants certainly should have in their possession records that bear out
2  whether or not they really only produced 18 knockoffs and have stopped all production
3  and shipment of such pieces. Malhotra has been on notice since no later than May 25,
4  2017, when he received the first cease-and-desist letter from Jason Scott, that litigation
5  was foreseeable and all related records should be preserved. However, as Defendants
6  ignored both cease-and-desist letters and have substantial operations outside the U.S.,
7  Jason Scott is concerned records may be destroyed or deleted. Defendants have not
8  offered any reason why the Court should not grant Jason Scott's request for impoundment
9  of records under 17 U.S.C. § 503(a), and doing so would ensure Jason Scott is able to
10 undertake full discovery into Malhotra's claims.

## Conclusion

The available evidence conflicts with Defendants' claims to have ceased manufacturing and importing knockoffs of Jason Scott furniture. But even if they have, failing to issue a preliminary injunction will enable Defendants to return to their infringing ways at any time. They have a factory in India at their disposal and undisputedly continued to take orders for and produce Jason Scott knockoffs well after receiving both of Jason Scott's cease-and-desist letters. An injunction will also prevent destruction of evidence and limit the harm to Jason Scott's customer goodwill and reputation. Jason Scott therefore respectfully requests that the Court issue the proposed preliminary injunction in this case.

21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /

RESPECTFULLY SUBMITTED this 5th day of September, 2017.

By /s/ Thomas E. Dietrich

Kenneth H. Brendel
Thomas E. Dietrich
Mangum, Wall, Stoops & Warden, PLLC
100 N. Elden St.
Flagstaff, AZ 86001

*Attorneys for Plaintiff Jason Scott Collection, Inc.*

I hereby certify that on September 5, 2017, I electronically submitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Sim Israeloff, Esq.
COWLES & THOMPSON, P.C.
901 Main St., Ste. 3900
Dallas, TX 75202
tel. 214.672.2000
sisraeloff@cowlesthompson.com

*Counsel for Defendants*