Kenneth H. Brendel (#019003)
Thomas E. Dietrich (#031299)
MANGUM, WALL, STOOPS & WARDEN, PLLC
100 N. Elden St.
Flagstaff, AZ 86001
Tel. 928.779.6951
kbrendel@mwswlaw.com
tdietrich@mwswlaw.com

*Attorneys for Plaintiff Jason Scott Collection, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| JASON SCOTT COLLECTION, INC., an Arizona corporation,<br><br>Plaintiff,<br><br>v.<br><br>TRENDILY FURNITURE, LLC, a Texas limited liability company, TRENDILY HOME COLLECTION, LLC, a Texas limited liability company, RAHUL MALHOTRA, an individual, JOHN DOE CORPORATIONS 1-10, and JOHN DOES 1-10,<br><br>Defendants. | Case No. 2:17-cv-02712-JJT<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiff Jason Scott Collection, Inc. ("Jason Scott") respectfully opposes the Motion to Dismiss filed by Defendants Trendily Furniture, LLC, Trendily Home Collection, LLC, and Rahul Malhotra (together, "Defendants" or "Trendily"). Defendants' motion is contrary to binding Ninth Circuit precedent directly on point. Because Defendants disregarded two cease-and-desist letters from Jason Scott, and continued to intentionally infringe Jason Scott's copyrights with knowledge Jason Scott is based in Arizona, Defendants are subject to personal jurisdiction in this state.

## I.     Legal Standard

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff "need only make a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss." *Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). A plaintiff meets that standard by "demonstrate[ing] facts that if true would support jurisdiction over the defendant." *Id*. "Unless directly contravened, [plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Id*. If the Court finds sufficient facts to exercise jurisdiction over the copyright claim, it may exercise jurisdiction over the remaining related claims. *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 673 (9th Cir. 2012).

## II.    Relevant Facts Supporting Personal Jurisdiction for Defendants

***Jason Scott learns of Defendants' knockoffs.*** Jason Scott learned in late 2016 that unauthorized imitations of Jason Scott furniture pieces were being sold in the marketplace. [*See* Dkt. 9, Ex. 1 (Declaration of Jason Forsberg in support of Motion for Preliminary Injunction) ¶ 13] After an investigation, Jason Scott determined Defendants—the two Trendily companies and their owner, Rahul Malhotra—are manufacturing and selling knockoffs of Jason Scott's Sacred Heart Dining Table, Borgota Buffet, and Iron Star Desk (the "JSC Pieces"). [*Id*. ¶¶ 14-26] Defendants' name for their knockoffs is the "MJ Collection" (the "Accused Products"). [*Id*. ¶17]

***Two cease-and-desist letters are ignored.*** After confirming Defendants were behind the knockoffs, on May 24, 2017, Jason Scott's counsel sent Defendants a cease-and-desist letter by mail and email. [Dkt. 1 (Complaint) ¶ 44, Ex. 8] The letter explained that Jason Scott owned the designs to its furniture pieces, which Defendants were infringing, and requested cessation of all copying. [*Id*.] Defendants never responded. [Dkt.

1 ¶ 45]

Jason Scott sent Defendants a second cease-and-desist letter on June 27, 2017, by FedEx and email. [Dkt. 1 ¶¶ 46-47, Ex. 9] The second letter explicitly stated that Defendants were copying furniture designs owned by Jason Scott, an Arizona corporation, and created by its owner, Jason Forsberg ("Forsberg"), an Arizona resident. [Dkt. 1, Ex. 9 at 1] This letter also included copies of the copyright registrations for each of the JSC Pieces. [*Id*., Atts.] Each registration listed Forsberg as the copyright claimant, with an address in Flagstaff, Arizona. [*Id*.] The letter stated Defendants were willfully infringing Jason Scott's copyrights, causing it to lose sales, and harming its reputation, and demanded Defendants immediately cease all infringing activities. [*Id*. at 1-2] Defendants ignored this second letter, too. [Dkt. 1 ¶ 48] Defendants have never disputed that they received both of Jason Scott's cease-and-desist letters.

***Evidence Defendants' copying is intentional.*** The JSC Pieces are embellished with many intricate, detailed carvings and decorative designs. [Dkt. 1, Ex. 1 (Photos of JSC Pieces)] There is no chance Defendants independently created the designs for the Accused Products—which are identical to the JSC Pieces, with the same carvings and the same decorative metalwork. [*See* Dkt. 1 ¶¶ 67, 76, 85] There is also much evidence Defendants intentionally copied designs they knew originated from Jason Scott.

In mid-June 2017, Malhotra pitched the Accused Products to a retailer, Hill Country Interiors, and claimed the Accused Products were "very close" to Jason Scott's but with a shorter lead time and lower price. [Dkt. 9, Ex. 1 ¶ 22, Att. B] When that retailer asked Malhotra how Trendily could copy Jason Scott's copyrighted designs, Malhotra responded that there was no legal protection for designs in the U.S. [*Id*.]

Several weeks later, in early July 2017, Malhotra pitched the knockoffs to another retailer, Calamity Jane's, and told the owner the Accused Products were "exactly like the Jason Scott pieces" and "identical." [Dkt. 9, Ex. 7 (Declaration of Shawn Beach) ¶ 4]

Malhotra stated Defendants were even making their own iron work and hardware to copy those features of the JSC Pieces. [*Id*.] On July 20, 2017, another Trendily representative came to Calamity Jane's and told the owner Defendants were selling "Jason Scott look-alikes." [*Id*. ¶ 5] The Trendily representative showed the owner photographs of the Accused Products, which were indistinguishable from the JSC Pieces, and told the store owner Defendants could make anything in Jason Scott's catalogue. [*Id*. ¶¶ 5-6]

On August 15, 2017, two Trendily representatives met with the owner of a third retail store, Runyon's, and pitched the Accused Products. [Dkt. 16, Ex. 1 (Declaration of Jason Forsberg in response to Motion to Cancel Hearing) ¶ 5] The Trendily representatives talked about how high demand was for the Accused Products and how Defendants had increased production to keep up with demand. [*Id*.]

***Defendants have several other connections to Arizona.*** In May 2017, Jason Scott's owner, Forsberg, tried to go incognito into the Trendily warehouse, but he was immediately recognized from 50-75 feet away by Malhotra. [Dkt. 9, Ex. 1 ¶ 20] Malhotra told Forsberg he had met Forsberg at an event in Arizona. [*Id*.] Malhotra said the same thing to the owner of a retail store the next day, and added that he thought Forsberg had come in to offer to pay Malhotra money to stop producing knockoffs. [*Id*. ¶ 21, Att. A]

Further, in early August 2017, Forsberg learned a retailer in Scottsdale, Arizona, sold Trendily furniture. [Dkt. 16, Ex. 1 ¶ 3, Att. A] Under a pseudonym, Forsberg contacted that retailer and asked if he could purchase Trendily's MJ Dining Table, one of the Accused Products. [*Id*.] The Arizona retailer first responded that they could get the table, and were "waiting to see if it is in the new containers coming across the ocean." [*Id*., Att. B at 3] Subsequently, on August 11, 2017, the Arizona retailer gave Forsberg a price quote and asked if he would like to order the knockoff table. [*Id*., Att. B at 1]

***Disputed facts must be viewed in favor of Jason Scott.*** Several facts are disputed, and thus Jason Scott's version of those facts must be taken as true by the Court:

1. Defendants' motion alleges Malhotra never "personally . . . offered for sale, or sold any of the three accused products." [Dkt. 13 ¶ 17] But the owners of Hill Country and Calamity Jane's both reported Malhotra pitched the knockoffs to them by claiming the knockoffs were "identical" and "very close" to the JSC Pieces. [Dkt. 9, Ex. 1 ¶ 22, Att. B; Dkt. 9, Ex. 7 ¶ 4]

2. Malhotra claims he "did not know that the Plaintiff's furniture designs were legally protected" and "did not intentionally or knowingly infringe on the Plaintiff's registered copyrights or trade dress." [Dkt. 12, Ex. 1 (Declaration of Rahul Malhotra) ¶ 11. But Malhotra and other Trendily representatives offered to sell knockoffs after Defendants received both of Jason Scott's cease-and-desist letters, which plainly explained the designs were protected. *See supra* at 2-4.

3. Malhotra claims he "did not attend a Jason Scott event in Scottsdale or hear Mr. Forsberg speak in public about his business and story." [Dkt. 9, Ex. 7 ¶ 6] That is a carefully-worded statement that does not mean Malhotra never came to Arizona to see Forsberg. Jason Scott has submitted evidence that Malhotra immediately recognized Forsberg from across a warehouse, and then told both Forsberg and, subsequently, another individual, that Malhotra had met Forsberg in Arizona. *See supra* at 4.

### III. Defendants Intentionally Reached Into Arizona to Harm Jason Scott and are Subject to Personal Jurisdiction in This State

Jason Scott contends Defendants are subject to specific, not general, jurisdiction due to their willful infringement of Jason Scott's intellectual property. In an infringement/tort case, a defendant has sufficient minimum contacts to be subject to specific jurisdiction if: (1) the defendant purposefully directed his activities at the forum state; (2) the claim arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction is reasonable. *Washington Shoe*, 704 F.3d at 672-73.

Defendants' only argument is that they should not be subject to personal jurisdiction in Arizona because they do not reside or own property in Arizona, or have a website expressly directed towards Arizona residents. But "the Ninth Circuit has held that specific jurisdiction exists where a plaintiff files suit in its home state against an out-of-state defendant and alleges that defendant intentionally infringed its intellectual property rights knowing it was located in the forum state." *Amini Innov. Corp. v. JS Imports Inc.*, 497 F.Supp. 2d 1093, 1105-06 (C.D. Cal. 2007) (citing numerous cases); *see also Washington Shoe*, 704 F.3d at 673 (explaining courts "may exercise personal jurisdiction over a defendant who engages in an intentional act that causes harm in the forum state, even if that act takes place outside of the forum state."); *Calder v. Jones*, 465 U.S. 783, 90 (1984) (stating "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California."). As explained below, Defendants are subject to jurisdiction in Arizona.[1]

### A.   Defendants Purposefully Directed Their Infringements at Arizona

The purposeful direction or "effects" test "requires that the defendant . . . have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (internal quotation marks omitted); *see also Calder*, 465 U.S. at 789-90. Each prong is met here.

---

[1] Defendants argue Jason Scott impermissibly grouped them together under the name "Trendily" in the Complaint. [Dkt. 13 ¶ 14] But Defendants admit Malhotra is the owner and operator of both Trendily companies. And Malhotra personally offered to sell the Accused Products to at least two retailers (that Jason Scott knows of). Malhotra was also the recipient of both cease-and-desist letters. Given that he personally committed infringing acts and also did so on behalf of and with his Trendily companies, it is appropriate to group Defendants together. They offer no reason to do otherwise.

### 1. Making and selling knockoffs are intentional acts

An "intentional act" under the effects test means to do something on purpose, i.e., "the external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intend results." *Washington Shoe*, 704 F.3d at 673-74. In *Washington Shoe*, the Ninth Circuit found "by intentionally engaging in the actual, physical acts of purchasing and selling the allegedly infringing boots, [defendant] has clearly committed an 'intentional act' within the meaning of the *Calder* test." *Id.* at 674; *see also Aweida Arts, Inc. v. Pure Glass Distrib., Inc.*, 157 F.Supp. 3d 929, 936 (W.D. Wash. 2015). Similarly, Defendants' manufacturing, offering for sale, and selling the Accused Products constitute "intentional acts" under the effects test.

### 2. Defendants' infringements were expressly aimed at Arizona

The "express aiming" prong asks whether the defendant's allegedly tortious action was expressly aimed at the forum. *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). "The exact form of [this] analysis varies from case to case and depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Id.*; *see also Washington Shoe*, 704 F.3d at 675. As such, it is appropriate for this Court to hew more closely to case law involving infringement claims, like *Washington Shoe*, rather than the *Walden* and *Picot* opinions cited by Defendants, which involve dissimilar claims. *See Picot*, 750 F.3d at 1214 (interference with contract); *Walden v. Fiore*, 134 S.Ct. 1115, 1120 (2014) (*Bivens* claim for Fourth Amendment violation by a federal agent).

As this Court noted in a copyright infringement case, "[t]he requirement of express aim is satisfied if the defendant's intentional act individually targeted the plaintiff, who is a forum resident." *Dirty World LLC v. College Envy LLC*, No. CV-15-01152, 2015 WL 11118112, *5 (D. Ariz. Nov. 9, 2015) (J. Tuchi). Along these lines, the Ninth Circuit has explained express aiming "depends to a great degree on the allegations of a willful copyright violation." *Washington Shoe*, 704 F.3d at 674. To prove willfulness, a plaintiff

1    must show "that the defendant was actually aware of the infringing activity, or . . . that the
2    defendant's actions were the result of reckless disregard for, or willful blindness to, the
3    copyright holder's rights." *Id*. Willfulness is relevant to personal jurisdiction because,
4    "where a defendant *knows*—as opposed to being able to foresee—that an intentional act
5    will impact another state, the 'expressly aimed' requirement is satisfied." *Id*. at 677; *see*
6    *also Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1130 (9th Cir. 2010)
7    (finding defendant's "individualized targeting" of plaintiff's copyrighted works, which
8    placed the parties in direct competition, satisfied express aiming prong).

9    It is a defendant knowingly causing an *impact* that is felt in the forum state which
10   establishes express aiming at that forum. *See Dirty World*, 2015 WL 11118112 at *5
11   (describing impact of financial penalty that would be felt in Arizona); *Aweida*, 157
12   F.Supp. 3d at 936 (finding defendant's intentional use of trademark after receiving
13   plaintiff's cease-and-desist letter meant the defendant "knowingly used unlawful tactics to
14   compete with a Washington corporation . . . [which] is further evidence of 'express
15   aiming.'"). "When copyrights are held by corporations, the 'right to control the work' will
16   typically be exercised where the corporation is located." *Washington Shoe*, 704 F.3d at
17   678. Therefore, "[t]he impact of an intentional violation of that right is necessarily
18   directed at that location," because "[w]hen the infringer intentionally interferes with the
19   holder's copyright, he strikes at the heart of the rights conferred by the Copyright Act, the
20   holder's right to control his copyright on his own terms." *Id*.

21   In *Washington Shoe*, for example, the Ninth Circuit considered a shoe store, A-Z—
22   with one location in Arkansas and no website—that sold boots that allegedly infringed the
23   copyrighted design of Washington Shoe, a manufacturer based in Washington. *Id*. at 670-
24   71. A-Z had purchased boots from Washington Shoe in the past but bought the knockoffs
25   from China. *Id*. at 675. After a sales representative spotted knockoff boots in the Arkansas
26   store, Washington Shoe sent two cease-and-desist letters, which A-Z ignored. *Id*. But after

receiving the letters, A-Z sold its remaining inventory of knockoffs. *Id*. The Ninth Circuit found these facts likely constituted willful infringement, particularly A-Z's sale of infringing boots "after receiving two cease-and-desist letters from Washington Shoe's corporate counsel in Washington." *Id*. at 675, 678. That, in turn, supported jurisdiction:

> A-Z's intentional acts were expressly aimed at the copyright held by Washington Shoe because A-Z *knew* that its intentional acts would impact Washington Shoe's copyright by virtue of the cease-and-desist letters it had received. Where A-Z knew or should have known that Washington Shoe is a Washington company, A-Z's intentional acts were expressly aimed at the state of Washington. . . . We think that A-Z's alleged willful infringement of Washington Shoe's copyright, and its knowledge of both the existence of the copyright and the forum of the copyright holder, is sufficient 'individualized targeting' to establish the 'something more' necessary to satisfy the express aiming requirement.

*Id*.

*Washington Shoe* remains good law after the *Walden* and *Picot* decisions cited by Defendants. *Walden* did not create new law, but rather recited "[w]ell-established principles of personal jurisdiction . . . ." 134 S.Ct. at 1126. In *Aweida*, which issued after both *Walden* and *Picot*, the U.S. District Court for the Western District of Washington closely followed *Washington Shoe* and found personal jurisdiction existed on similar facts—a defendant who intentionally infringed plaintiff's trademark even after receiving a cease-and-desist letter. 157 F.Supp. 3d at 936-37. Further, another court in this district has distinguished *Walden* and *Picot* and found personal jurisdiction exists when a defendant "caused harm that he knew was likely to be suffered in Arizona." *Atkins v. Calypso Sys., Inc.*, No. CV-14-02706, 2015 WL 5856881, *6-7 (D. Ariz. Oct. 8, 2015) (citing *Washington Shoe*, 704 F.3d at 679). In *Atkins*, Judge Wake found the plaintiff's allegations that the defendant caused injury "from communications knowingly made to a person presently residing in Arizona" were "a far cry from *Picot*, where a California plaintiff claimed injury on the grounds that a Michigan resident's statements to an Ohio resident caused a Delaware corporation to cease payments in Wyoming and Australia." *Id*.

at *7. *Walden* was "similarly inapposite," as the defendant took no intentional action directed towards the forum state. *Id*.

Here, Jason Scott has provided evidence that Malhotra and his Trendily companies intentionally copied Jason Scott's protected furniture designs. They did so in order to enter into direct competition against Jason Scott, undercutting Jason Scott's market and dealer network, which had been built through Jason Scott carefully maintaining sole control over its designs and manufacturing rights. [Dkt. 9, Ex. 1 ¶ 10] Critically, Defendants continued to offer to sell the Accused Products after receiving two cease-and-desist letters from Jason Scott's counsel. There can thus be no question that Defendants knew about the copyrights and knew their activities were causing an impact felt in Arizona, where they knew Jason Scott and Forsberg reside. These facts establish express aiming under the effects test. *See id.*; *Aweida*, 157 F.Supp. 3d at 936; *Amini*, 497 F.Supp. 2d at 1107. Neither *Walden* nor *Picot*—which involved different types of claims and a lack of evidence of a known, intentional impact in the forum—warrant dismissal.

### 3. Defendants knew harm would be suffered in Arizona

The last prong of the effects test is whether the defendant knew the harm it caused is likely to be suffered in the forum state. *Mavrix*, 647 F.3d at 1228. Defendants do not dispute this point, and it is clearly met. "The economic loss caused by intentional infringement of a plaintiff's copyright is foreseeable . . . both in the forum where the infringement took place . . . and where the copyright holder has its principal place of business . . . ." *Washington Shoe*, 704 F.3d at 679; *see also Dirty World*, 2015 WL 11118112 at *5 (stating "[i]n infringement and non-infringement cases, the harm is equally suffered by both parties in their respective states."). The evidence Jason Scott has provided would permit a fact-finder to conclude Defendants knew the impact of their intentional infringement of Jason Scott's rights would be felt by Jason Scott in Arizona. *See Aweida*, 157 F.Supp. 3d at 937. That is sufficient to satisfy the third prong of the

effects test, and thus proves purposeful direction by Defendants, meaning they can "reasonably anticipate being haled into court" in Arizona. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

### B. Jason Scott's Claims Arise From Defendants' Forum-Related Activities

Turning back to the three-part test for personal jurisdiction, Jason Scott's evidence supports the conclusion its claims arise out of Defendants' forum-related activities. This does not require that Defendants' activities take place in Arizona, but rather that the claims arise out of or relate to their "forum-*related*" activities. *Washington Shoe*, 704 F.3d at 672 (emphasis added); *Aweida*, 157 F.Supp. 3d at 937. The *Aweida* court considered as relevant to this analysis that the defendant engaged in conduct inside the forum via its website, which touted its product and provided contact information but did not permit visitors to order products. 157 F.Supp. 3d at 933, 937. Likewise, Jason Scott has alleged Defendants' website is accessible in Arizona and displays the Accused Products, and Defendants gave a price quote to an Arizona retailer for an Accused Product. [Dkt. 1 ¶ 13; Dkt. 16, Ex. 1 ¶ 3, Atts. A, B] However, *Aweida* found that even without the website evidence the defendant's knowing and intentional infringements were "forum-related activity" from which the suit arose. 157 F.Supp. 3d at 937. That court noted the *Washington Shoe* "holding that conduct outside the forum state constitutes purposeful direction would be meaningless if the defendant could avoid the jurisdictional consequences of that action merely by noting that it occurred outside the forum state." *Id*. at 937 n.1. Here, Jason Scott's claims arise from Defendants' forum-related activities— their knowingly and intentionally infringing Jason Scott's copyrights to compete directly against Jason Scott, causing financial and reputational harm Defendants knew would be suffered by the corporation in Arizona.

/ / /

/ / /

### C. Exercise of Jurisdiction is Reasonable

"Once purposeful direction is established, defendants may defeat jurisdiction only by 'presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Amini*, 497 F.Supp. 2d at 1108 (quoting *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993)). This burden falls on Defendants. *See Dirty World*, 2015 WL 11118112, *6. They do not, however, make any argument at all on this issue in their Motion.

There is "no reason why litigating this dispute in [Arizona] would be 'so gravely difficult and inconvenient' for defendants as that they would be placed at a 'severe disadvantage in comparison to [their] opponent.'" *Amini*, 497 F.Supp. 2d at 1108 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985)). Further, a state "has a plain interest in protecting the intellectual property rights of its residents." *Aweida*, 157 F.Supp. 3d at 938. This Court thus can reasonably exercise jurisdiction over Defendants in this district, and they do not raise any argument to the contrary. Because personal jurisdiction in Arizona is proper, venue is also proper in this district. *See Brayton Purcell*, 606 F.3d at 1126; *Dirty World*, 2015 WL 11118112 at *9.

### Conclusion

Defendants flagrantly and intentionally ripped off Jason Scott's protected intellectual property to create knockoffs, with which they competed directly against Jason Scott. Defendants continued to infringe after receiving two cease-and-desist letters clearly explaining that their actions were causing a severe impact to Jason Scott in Arizona. Jason Scott has submitted facts showing a prima facie case for exercising personal jurisdiction over Defendants, and the Court should therefore deny Defendants' Motion to Dismiss.

///

///

///

RESPECTFULLY SUBMITTED this 13th day of September, 2017.

By /s/ Thomas E. Dietrich

Kenneth H. Brendel
Thomas E. Dietrich
Mangum, Wall, Stoops & Warden, PLLC
100 N. Elden St.
Flagstaff, AZ 86001

*Attorneys for Plaintiff Jason Scott Collection, Inc.*

I hereby certify that on September 13, 2017, I electronically submitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Sim Israeloff, Esq.
COWLES & THOMPSON, P.C.
901 Main St., Ste. 3900
Dallas, TX 75202
tel. 214.672.2000
sisraeloff@cowlesthompson.com

*Counsel for Defendants*