1  Kenneth H. Brendel (#019003)
2  Thomas E. Dietrich (#031299)
   MANGUM, WALL, STOOPS & WARDEN, PLLC
3  100 N. Elden St.
   Flagstaff, AZ 86001
4  Tel. 928.779.6951
   kbrendel@mswlaw.com
5  tdietrich@mswlaw.com

6
   *Attorneys for Plaintiff Jason Scott Collection,*
7  *Inc.*

8

9              **UNITED STATES DISTRICT COURT**

10                   **DISTRICT OF ARIZONA**

11  Jason Scott Collection, Inc., an Arizona          Case No. 2:17-cv-02712-JJT
    corporation,
12
              Plaintiff,
13
          v.                                          **PLAINTIFF'S REPLY IN SUPPORT**
14                                                    **OF MOTION FOR SUMMARY**
    Trendily Furniture, LLC, a Texas limited          **JUDGMENT**
15  liability company; Trendily Home
    Collection, LLC, a Texas limited liability
16  company; Rahul Malhotra, an individual;
    John Doe Corporations 1-10; and John
17  Does 1-10,

18            Defendants.

19

20          Defendants do not dispute they intentionally copied Jason Scott's furniture to make

21  the Accused Products, pitched the knockoffs to authorized Jason Scott dealers, and

22  disrupted Jason Scott's business. Defendants agree the JSC Pieces have a unique look and

23  feel recognizable to customers as originating from Jason Scott. They agree they ignored

24  two cease-and-desist letters and sold the Accused Products until they got sued—even

25  offering to make more knockoffs of other Jason Scott pieces *after* getting Jason Scott's

26  letters. Defendants' arguments on the several legal issues they do dispute are not

1   supported by any evidence and are directly contrary to Ninth Circuit and Supreme Court

2   law. The undisputed facts support judgment for Jason Scott on all claims and an award of

3   damages, a double damages enhancement, and attorneys' fees.

4   **I.      Defendants' Rebuttal Evidence is Nearly Nonexistent**

5          To rebut Jason Scott's evidence, Defendants "must present significant probative

6   evidence tending to support [their] claim or defense." *Intel Corp. v. Hartford Accident &*

7   *Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Such evidence *must* be presented in their

8   summary judgment response to establish a genuine issue. *Carmen v. San Francisco*

9   *Unified School Dist.*, 237 F.3d 1026, 1030-31 (9th Cir. 2001) ("whatever establishes a

10  genuine issue of fact must *both* be in the district court file *and* set forth in the response").

11  Defendants proffer next to no evidence—three unauthenticated spreadsheets and five

12  pages of Google Images search results for Zia symbols and iron and wood rosettes. [Doc.

13  81-1, Exs. M, N] That mere "scintilla" of evidence is insufficient to create a genuine

14  dispute of material fact. *See Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

15         Defendants repeatedly object to Jason Scott's facts on the basis Jason Scott "does

16  not rely on this statement in support of its Motion with respect to its copyright claims."

17  [*See* Doc. 80 at 6-7; Doc. 81 (throughout)] That objection is unfounded. Jason Scott seeks

18  summary judgment on copyright infringement *and* trade dress infringement and unfair

19  competition. That Jason Scott proffers facts on the latter claims is no ground for objection.

20  This is particularly true when, as explained below, Defendants' argument that the trade

21  dress claims are invalid is squarely against Ninth Circuit law. The Court should disregard

22  these objections and consider all of the evidence submitted by Jason Scott.

23  **II.     Undisputed Evidence Supports Judgment on Copyright Infringement**
24  **Liability and Award of Damages**

25         On copyright infringement liability, Defendants' only argument is that Jason Scott's

26  designs are not original. [Doc. 80 at 8] That argument fails, and nothing else is disputed.

1    **A.    Forsberg's Designs Meet the "Extremely Low" Standard of Originality**

2    "Establishing originality implicates only a light burden." *Universal Furniture*

3    *Intern., Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 430 (4th Cir. 2010). "Original,

4    as the term is used in copyright, means only that the work was independently created by

5    the author (as opposed to copied from other works), and that it possesses at least some

6    minimal degree of creativity." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345

7    (1991); *see also Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1109 (9th Cir.

8    1970) ("originality . . . merely calls for independent creation, not novelty"). "[T]he

9    requisite level of creativity is *extremely low*; *even a slight amount will suffice*." *Feist*, 499

10    U.S. at 345 (emphasis added). Thus, "[t]he vast majority of works will make the grade

11    quite easily, as they possess some creative spark, no matter how crude, humble or obvious

12    it might be." *Id*. "[A] work may be original even though it closely resembles other works

13    so long as the similarity is fortuitous, not the result of copying." *Id*. at 345-46. "Even

14    when the work at issue is a compilation of preexisting design elements, the originality

15    threshold remains low." *Universal*, 618 F.3d at 430 (analyzing furniture designs). A

16    compilation is copyrightable "if original skill and labor is expended in creating the work,"

17    "even if the material of which it is composed is not copyrightable itself." *Id*.

18    In its complaint, Jason Scott alleged its copyrights cover "numerous ornamental

19    sculptures and carvings and original arrangements of ornamental sculptures and carvings"

20    on the JSC Pieces [Doc. 1 ¶ 27] Jason Scott described the ornamental elements in its

21    summary judgment papers. [Doc. 77 ¶ 12] And Jason Scott's evidence proves Forsberg (a)

22    independently created designs for the JSC Pieces, (b) did not copy from any prior

23    common source, and (c) applied his knowledge and "creative spark" in the creation,

24    selection, and arrangement of design elements. [Doc. 77 ¶¶ 1, 8-9, 15; Doc. 77-2 ¶¶ 6-16]

25    All Defendants offer in rebuttal is that other furniture exists in the world that has

26    ironwork or woodcarvings. [*See* Doc. 81 ¶¶ 78, 80] That Jason Scott does not dispute. But

1   Defendants have not offered any evidence that Forsberg *copied* another work to create the

2   designs for the JSC Pieces. Nor have they offered evidence that the design features shown

3   in their Exhibit N predate the JSC Pieces such that Forsberg *could have* copied them. That

4   scant evidence is not enough to create a genuine issue of material fact. Defendants' claim

5   is akin to arguing the Mona Lisa is not original because there exist other portraits of

6   women with smiles. The uncontroverted evidence introduced by Jason Scott satisfies the

7   "light burden" of proving originality. *See, e.g.*, *Universal*, 618 F.3d at 430-31 (finding

8   furniture designs original).

9           **B.      Defendants Do Not Dispute Other Elements of Copyright Infringement**

10          Defendants do not dispute that Forsberg designed the JSC Pieces or that Jason

11  Scott holds registered copyrights in elements of those designs. [Doc. 81 ¶¶ 1, 11-12[1]]

12  Defendants do not dispute intentional copying. [*Id*. ¶ 30] Nor do they dispute that the

13  works in question are strikingly similar, or are substantially similar and that they had

14  access to the JSC Pieces. [*Id*. ¶¶ 22-31, 35-39] There is thus no genuine dispute as any

15  material fact on copyright infringement liability, and Jason Scott is entitled to summary

16  judgment on that claim. *See Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 987

17  (9th Cir. 2017); *see also Island Software & Comp. Serv., Inc. v. Microsoft Corp.*, 413 F.3d

18  257, 261-62 (2d Cir. 2005) (granting summary judgment to plaintiff where undisputed

19  testimony proved copying and defendant failed offer "specific affirmative evidence" to

20  rebut uncontroverted assertions).

21          **C.      There is No Genuine Issue as to Copyright Damages**

22          Jason Scott is not seeking statutory damages under copyright law; why Defendants

23  argue that point is unknown. Jason Scott has met its burden of proving Defendants' gross

24  ────────────────────

25  [1] Where Defendants stated a fact is undisputed, Jason Scott cites to the relevant paragraph
    of Defendants' Controverting Statement of Facts, which corresponds to the paragraph

26  number in Jason Scott's Separate Statement of Fact containing the fact itself.

1    sales of Accused Products total $25,185. [Doc. 77 ¶ 61] Defendants quibble with that

2    number but rely on the same document for their own calculations. [*Compare* Doc. 77-3

3    Att. 5 *with* Doc. 81-2 at 1] It is thus Defendants' burden to "prove the elements of costs to

4    be deducted from the sales in arriving at profit." *Frank Music Corp. v. Metro-Goldwyn-*

5    *Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985). "If the infringing defendant does not meet

6    its burden of proving costs, the gross figure stands as defendant's profits." *Id.* "Any doubt

7    as to the computation of costs or profits is to be resolved in favor of the plaintiff." *Id.*

8         Defendants first argue the gross sales figure should be reduced to $23,786, because

9    a credit memo for $1,399 was issued to a customer. [Doc. 81 ¶ 66; Doc. 81-2 at 1]

10   Defendants do not offer evidence as to why that credit memo issued. Presuming it was a

11   customer return, that is not a deductible expense—a "[d]efendant may not deduct the cost

12   of those infringing copies from which no gross revenues were derived because they either

13   were not 'sold' or were later returned." 4 Melville B. Nimmer, David Nimmer, *Nimmer on*

14   *Copyright* § 14.03[C][1] at p. 14-52 (2007); *Dolori Fabrics, Inc. v. Limited, Inc.*, 662

15   F.Supp. 1347, 1356 (S.D.N.Y. 1987) (rejecting deductions for returns and charge-backs);

16   *Jarvis v. A & M Records*, 827 F.Supp. 282, 294-95 (D.N.J. 1993) (deductions for goods

17   sold then returned "clearly not allowable as a matter of law"). It would thus be legally

18   improper to reduce gross sales of $25,185 by the amount of any returns.

19        Defendants next try to reduce gross sales by $6,150, which appears to be the cost

20   of goods for *all* 18 of the Accused Products manufactured. [Doc. 81 ¶ 66; Doc. 81-2 at 2]

21   But a defendant cannot deduct the costs of infringing copies not sold. *See* Nimmer, *supra*

22   § 14.03[C][1] at p. 14-52. Defendants' own evidence shows, and they do not dispute, that

23   they sold 15 Accused Products—six tables, four desks, and five buffets. [Doc. 77 ¶ 43;

24   Doc. 81-2 at 1] Thus, based on Defendants' cost of goods per piece ($365/table,

25   $300/desk, $360/buffet), the cost of goods for the Accused Products sold totals $5,190.

26   [*See* Doc. 81-2 at 2] Subtracting those costs from gross sales of $25,185 equals $19,995.

1   This cannot be disputed—it is based on Defendants' own evidence. Therefore, there is no

2   genuine dispute that Jason Scott is entitled to $19,995 in damages for copyright

3   infringement.[2]

4   **III.    Ninth Circuit Law and Undisputed Evidence Support Trade Dress Liability**

5          Defendants' argue Jason Scott's trade dress claims are "clearly prohibited by the

6   Ninth Circuit jurisprudence." That is flat wrong. And Defendants have not substantively

7   disputed *any* facts proving liability for trade dress infringement and damages.

8          **A.    The Ninth Circuit Squarely Rejected Defendant's *Dastar* Argument**

9          Defendants contend—without citing any Ninth Circuit cases—that "Ninth Circuit

10  jurisprudence would prohibit" Jason Scott from pursuing trade dress claims for

11  Defendants' copying of the total look and feel of the JSC Pieces while also pursuing a

12  copyright claim for Defendants' copying of protected elements of those pieces. [Doc. 80 at

13  9-11, 15-17] The Ninth Circuit squarely rejected Defendants' position in *Mercado Latino,*

14  *Inc. v. Indio Prods., Inc.*, 649 Fed. Appx. 633 (9th Cir. 2016).

15         In *Mercado*, the defendant sold knockoffs of plaintiff's devotional prayer candles,

16  and the plaintiff sued for copyright and trade dress infringement. *Id*. at 634. Acting on an

17  argument identical to Defendants' here, the district court dismissed the trade dress claims

18  as "precluded" by the Copyright Act under *Dastar Corp. v. Twentieth Century Fox Film*

19  *Corp.*, 539 U.S. 23 (2003), and a related case, *Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir.

20  1990). *Mercado*, 649 Fed. Appx. at 634. The Ninth Circuit reversed the dismissal, finding

21  the district court's "reliance on *Dastar* and *Shaw* was misplaced" because "[b]oth of those

22

23  [2] Defendants claim other unspecified deductible expenses may exist based on an
    unauthenticated spreadsheet apparently created for litigation by an unknown person. [Doc.

24  81 ¶ 66; Doc. 81-2 at 3] Jason Scott objects to that document on grounds of foundation,
    authentication, and hearsay. As Defendants cannot even identify the other expenses, their

25  claim should be disregarded. *See Frank*, 772 F.2d at 516 ("the defendant bears the burden
    of explaining, at least in general terms, how claimed overhead actually contributed to the

26  production of the infringing work").

1    cases addressed the narrow instance in which a plaintiff alleges the defendant has violated

2    the Lanham Act by falsely designating the origin of 'a communicative product,' i.e., a

3    product 'that is valued not primarily for its physical qualities, such as a hammer, but for

4    the intellectual content that it conveys, such as a book or a video.'" *Id.* (quoting *Dastar*,

5    539 U.S. at 33). *Dastar* involved alleged reverse passing-off of a video series, and *Shaw*

6    reverse passing-off of a TV script. "Importantly, neither *Dastar* nor *Shaw* addressed

7    traditional trademark and trade dress claims that allege a defendant's production of

8    tangible goods are so similar to the plaintiff's as to confuse consumers." *Id.*

9          *Mercado* involved candles, not communicative works, which made the difference.

10   As the Ninth Circuit explained, a "traditional trade dress claim" that the defendant's

11   product design is so similar to plaintiff's as to cause consumer confusion "*do[es] not raise*

12   *any concern that [plaintiff's] claims will cause the Lanham Act to conflict with the law of*

13   *copyright*." *Id.* (emphasis added). Such a plaintiff "may bring its claim for trade dress

14   infringement under Section 43 of the Lanham Act *regardless of whether its claim for*

15   *copyright infringement is based on the same facts*." *Id.* at 635 (citing *Wal-Mart Stores,*

16   *Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 208 (2000)) (emphasis added). "Congress

17   created two separate statutory schemes to govern copyrights and trademarks; in order to

18   effectuate the purposes under both statutes, damages may be awarded under both."

19   *Mercado*, 649 Fed. Appx. at 635. The Ninth Circuit found the Supreme Court implicitly

20   supported this holding. *See Wal-Mart*, 529 U.S. at 208, 214-16 (leaving undisturbed a

21   verdict for copyright infringement for copying elements of clothing while holding trade

22   dress in the same clothing could be infringed if it had acquired secondary meaning); *see*

23   *also DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015) (defendant's Batmobile replicas

24   infringed both copyright and trade dress); *Art Attack Ink, LLC v. MGA Enter. Inc.*, 581

25   F.3d 1138 (9th Cir. 2009) (analyzing copyright and trade dress claims based on the same

26   cartoon figures without finding preemption).

An authoritative legal commentator has also rejected Defendants' position. *See* Thomas McCarthy, *1 McCarthy on Trademarks and Unfair Competition* § 6:5 (5th ed. Nov. 2018 update). McCarthy states "[t]he *Dastar* court made no such ruling" that "a claim cannot be made for both federal copyright infringement and federal Lanham Act trade dress or trademark infringement." *Id*. "There is no such rule that plaintiff must plead and prove only a copyright infringement claim" and "[t]here certainly can be no 'preemption' by copyright law of claims brought under the federal Lanham Act." *Id*; *see also Alameda Films SA de CV v. Authors Rights Resto. Corp., Inc.*, 331 F.3d 472, 483 (5th Cir. 2003) ("The federal Copyright Act does not preempt the federal Lanham Act, or vice-versa. In fact, it is common practice for copyright owners to sue for both infringement under the 1976 Copyright Act and unfair competition under the Lanham Act. Such a litigation posture has never been disallowed by the courts on grounds of either preemption or impermissible double recovery.").

Jason Scott's trade dress claims concern tangible goods—tables, desks, and buffets. As in *Mercado*, these are "traditional trade dress claims" based on Defendants' sale of near-identical knockoffs. Thus, *Dastar* is no bar "regardless of whether [Jason Scott's] claim for copyright infringement is based on the same facts." *Mercado*, 649 Fed. Appx. at 634-35.[3] *Mercado* also reversed the district court's dismissal of plaintiff's unfair competition law on the same grounds. *See id*. at 635. This Court should therefore reject Defendants' arguments on both trade dress and unfair competition. Defendants misread *Dastar*, cite "Ninth Circuit jurisprudence" that does not exist, and ignore case law and commentary directly on point; ruling for Defendants would guarantee injection of reversible error into this case.

---

[3] Jason Scott's copyright and trade dress claims do differ in scope. The former arises from copying of copyrightable elements. The latter arise from copying of the total look and feel of the pieces, including design elements, color, and overall appearance.

**B. Defendants Do Not Dispute Facts Proving Trade Dress Infringement**

*Dastar* aside, Defendants do not dispute any facts proving trade dress infringement. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) (plaintiff must prove nonfunctionality, secondary meaning, and likelihood of customer confusion). Defendants agree the JSC Trade Dress is nonfunctional. [Doc. 81 ¶ 15] They agree they intentionally copied the JSC Trade Dress [*Id*. ¶¶ 30-34], which is enough on its own to support secondary meaning. [*See* Doc. 76 at 11-12] They do not dispute other factors supporting secondary meaning: uniqueness of trade dress [Doc. 81 ¶¶ 8, 14]; retail customers and end consumers recognize the trade dress as originating from Jason Scott [*Id*. ¶¶ 5-7, 14]; and Jason Scott is well-established in the market and has a history of exclusively selling the JSC Pieces [*Id*. ¶¶ 2, 10, 16, 25, 29]. Lastly, Defendants do not dispute any facts showing a likelihood of customer confusion [*Id*. ¶¶ 23, 30-53]

Even where Defendants purport to dispute evidence offered by Jason Scott, they have not offered a shred of controverting evidence, let alone "significant probative evidence" supporting their defenses. *Intel*, 952 F.2d at 1558. Defendants have thus failed to show any genuine dispute as to trade dress infringement, and Jason Scott is entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Island Software*, 413 F.3d at 261-62 (summary judgment warranted where defendant failed submit "specific affirmative evidence" to rebut plaintiff's uncontroverted assertions).

**C. Defendants' Objections to Damages are Unsupported**

Jason Scott's calculation of gross sales minus cost of goods applies equally to its trade dress claims. *See* 15 U.S.C. § 1117 ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."). That entitles Jason Scott to no less than $19,995 in damages.

Defendants argue Jason Scott's evidence supporting that it suffered damages by being unable to implement a price increase "does not necessarily show causality and is at

1    least a disputed material fact." [Doc. 80 at 15] But a party may "not rest on his allegations

2    . . . to get to a jury" and avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477

3    U.S. 242, 249 (1986). And the nonmovant's burden is not satisfied by "some metaphysical

4    doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

5    475 U.S. 574, 586 (1986). All of the offered evidence shows Jason Scott canceled a

6    needed price increase specifically because of Defendants' actions. [Doc. 77 ¶ 63; Doc. 77-

7    2 ¶¶ 48-53; Doc. 77-5 ¶¶ 17-19] There is *no* controverting evidence to create a genuine

8    dispute as to causation. And, while Defendants do not take issue with the amount of

9    damages, there is no evidence to suggest it is anything other than a fair and reasonable

10   assessment based on reasonable inferences. *See Skydive Ariz., Inc. v. Quattrocchi*, 673

11   F.3d 1105, 1112 (9th Cir. 2012) (describing plaintiff's "relaxed" evidentiary burden in

12   proving damages).

13          The same goes for damages from loss of a customer, Coyote Candle. Jason Scott's

14   evidence shows it lost that customer as a direct result of Defendants' knockoffs being on

15   the market. [Doc. 77 ¶ 62; Doc. 77-2 ¶¶ 45-48, Att. 8; Doc. 77-4 ¶¶ 6-13, Att. 1]

16   Defendants have put forth *not one iota* of evidence to contradict the Coyote Candle

17   owner's stated plan to cease ordering from Jason Scott if he were identified relating to the

18   knockoffs and his subsequent cessation of all purchases. There is no support for any other

19   explanation. Defendants cannot conjure genuine disputes out of thin air—they need

20   "significant probative evidence." *Intel*, 952 F.2d at 1558. Their failure to offer any

21   warrants awarding Jason Scott the requested trade dress damages. *See* Fed. R. Civ. P.

22   56(e) (if a party fails to address the movant's assertion of fact, the court may "grant

23   summary judgment if the motion and supporting materials—including the facts considered

24   undisputed—show that the movant is entitled to it"); *Radisson Hotels Intern., Inc. v.

25   Majestic Towers, Inc.*, 488 F.Supp. 2d 953, 958 (C.D. Cal. 2007) ("undisputed affidavits

26   may establish damages for purposes of plaintiff's summary judgment motion").

**D.      Defendants Do Not Dispute Facts Warranting Enhancement, Fees**

Finally, Defendants do not dispute any facts supporting a double damages enhancement or attorneys' fees award under the Lanham Act. Among other things, Defendants acknowledge intentionally copying Jason Scott's designs and look. [Doc. 80 ¶¶ 30-31, 34]. They knew early on the Accused Products were Jason Scott look-alikes. [*Id*. ¶¶ 35-36] They knowingly tried to steal away Jason Scott's authorized retailers, pitching indistinguishable knockoffs at lower prices. [*Id*. ¶¶ 41-42, 46, 49-51] They ignored two cease-and-desist letters and offered to make even more knockoffs after those letters. [*Id*. ¶ 56] They told one of Jason Scott's biggest customers that Jason Scott was powerless to stop the copying. [*Id*. ¶ 47] And they destroyed relevant evidence. [*Id*. ¶ 58] The undisputed facts prove a damages enhancement would satisfy the twin aims of addressing uncompensated harms and deterrence, and that this is an "exceptional case" warranting a fees award. [*See* Doc. 76 at 14-17]

**Conclusion**

Defendants' arguments to invalidate the trade dress claims and reduce damages are unsupported by law. Otherwise, they have not disputed critical facts and not offered significant (or any) probative evidence on the few facts they do dispute. Jason Scott is entitled to summary judgment on its claims and to an award of damages, a damages enhancement, and attorneys' fees and costs. Throughout this case, Defendants employed tactics intended to drive up the legal costs to Jason Scott—moving to dismiss without factual or legal support, refusing to agree to an injunction despite having already stopped making knockoffs, destroying evidence, forcing discovery disputes over simple issues. Jason Scott is a small business. Shouldering litigation costs has been difficult but is necessary to protect Jason Scott's livelihood. This is the quintessential example of a company whom public policy favors awarding damages, fees, and costs where—without such an award—protecting its intellectual property might be impossible.

1   RESPECTFULLY SUBMITTED this 20th day of February, 2019.

2

3   By /s/ Thomas E. Dietrich

4   Kenneth H. Brendel
    Thomas E. Dietrich
    Mangum, Wall, Stoops & Warden, PLLC
5   100 N. Elden St.
    Flagstaff, AZ 86001
6

7   *Attorneys for Plaintiff Jason Scott Collection, Inc.*

8

9       I hereby certify that on February 20, 2019, I electronically submitted the attached

10  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

11  Notice of Electronic Filing to the following CM/ECF registrant:

12
    Brandon Leavitt
13  Eldredge Law Firm
    4204 SW Green Oaks Blvd., Ste. 140
14  Arlington, TX 76017
    tel. 214.727.2055
15  brandon@dfwpatentlaw.com

16  *Attorneys for Defendants*

17

18

19

20

21

22

23

24

25

26