Brandon James Leavitt (TX#24078841)
Eldredge Law Firm
4204 SW Green Oaks Blvd. Suite 140
Arlington, TX 76017
Telephone: (214) 727-2055
brandon@uslawpros.com

*Attorney for Defendants Trendly Furniture LLC, et al.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Scott Collection Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Trendily Furniture LLC, *et al*.<br><br>Defendants. | No. CV-17-02712-PHX-JJT<br><br>**RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT** |

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and LRCiv 7.2 Defendants respectfully move this Court to alter or amend its ruling (Doc. 129) dated March 9, 2021 and in support state the following:

**I.   ISSUES PRESENTED**

**Question 1** - Did the Court err or subject the Defendants to manifest injustice by inferring without scrutiny or analysis that, because the Parties disputed how to comply with its destructive order, the Defendants had "resisted compliance" with the order?

**Question 2** – Did the Court err or subject the Defendants to manifest injustice by presuming, without scrutiny or analysis, that Mr. Malhotra could have no logical purpose in copying the Plaintiff's furniture except to profit from its secondary meaning?

**Question 3** – Does the newly discovered affidavit testimony of Ben Aufill compel the Court to deny or alter Plaintiff's damages with respect to Coyote Candle?

## II.  RELEVANT BACKGROUND AND FACTS

On March 8, 2021, after a trial on the merits and post-trial briefing, this Court ruled in favor of the Plaintiff on the issues of trade dress infringement and awarded damages and attorney's fees therefrom. *See generally* Doc, 129.

### A.  The Court inferred without analysis that, because the Parties disputed *how* to comply with its destructive order, the Defendants had "resisted compliance" with the order.

Prior to awarding fees, the Court had reached the issue of copyright infringement by summary judgment, ordering damages, a permanent injunction, and the destruction of the Defendants' infringing furniture. *See* Doc. 129 Part I. pg. 2.

Although the Defendants had complied with the damage and injunctive portions of the Court's order, the Parties disputed the manner of compliance with the order to destroy, with the Defendant proposing that sanding or cutting away the discernable features reasonable complied with the order and requesting that the Court provide clarification. *See Id*. Part III pg. 16; *compare* Doc. 126.

But when the Court ultimately resolved this question in the Plaintiff's favor it did so without discussing whether the Defendants' interpretation was reasonable and with the acknowledgment that it is not an expert in furniture destruction. *See* Doc 129 Part III.

Yet in reaching the issue of attorney's fees, the Court inferred without additional analysis that the Defendant's interpretation of the destructive order comprised a "resisted compliance" and factored this finding in its decision to award fees. *See* Doc. 129 Parts II.B.6 *and* III, pp. 16-17.

### B. The Court presumed without analysis that Mr. Malhotra could have no logical purpose to copy the Plaintiff's furniture except to profit from its secondary meaning.

At trial and by post-trial brief the Defendants presented to the Court that, although he had intentionally copied the Plaintiff's furniture, Mr. Malhotra: (1) did not know of the Plaintiff when he did so; (2) had no reason to believe that furniture could be protected by trademark law; (3) had no reason to believe that the Plaintiff's furniture had been protected by trademark law; (4) sincerely believed that all hand-crafted furniture was unique; and (5) sincerely doubted the enforceability of the unregistered trade dress asserted in the Plaintiff's cease and desist letters. *See generally* Doc. 124 Part I.C.1, pp 5-6. Defendants also presented to the Court that: (6) any goodwill asserted by the Plaintiff was in its backstory rather than in its furniture. *See Id*.

Yet, in reaching the issue of attorney fees the Court only addressed that Mr. Malhotra: (a) intentionally copied the Plaintiff's furniture; (b) that he was likely aware of the Plaintiff when he did so; and (c) inferred without additional analysis that he had "no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence." *See* Doc. 129 Parts II.B.1-2, pp. 3-7 (*quoting Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.*, 283 F.2d 551, 557-58 (9th Cir. 1960).

**C. Newly discovered evidence: Ben Aufill has signed an affidavit stating that the Defendants did not cause the Plaintiff to lose any business with Coyote Candle.**

Upon reaching the issue of damages this Court relied on the Plaintiff's testimony interpreting correspondence with Ben Aufill, the owner of furniture retailer Coyote Candle, to hold that Coyote Candle had ceased doing business with the Plaintiff because of Mr. Aufill's difficult position as a shared customer of each Party. *See generally* Doc. 129 Part II.D.3.a.

Thus, without having had the opportunity to hear Mr. Aufill's direct testimony—but recognizing Mr. Aufill's discomfort becoming involved in legal proceedings—this Court awarded the Plaintiff its calculated loss of sales to Coyote Candle ("Lost Sales"). *See Id*.

Subsequently, Mr. Aufill was "astonished" to learn that the Court held Defendants responsible for the Plaintiff's Lost Sales and has since signed an affidavit (Att. 1) stating: (1) Coyote Candle's decreased purchases of Plaintiff's furniture had nothing to do with the Defendant's actions; (2) that Plaintiff's assertions otherwise "grossly misstated" the situation and "misled the court to [its] favour by an untrue story; (3) Mr. Aufill had withheld this information to avoid becoming involved in the trial; and (4) Mr. Aufill now volunteers this information so as to "correct the injustice caused by involving [his] name.

Mr. Aufill's affidavit also states that his total net purchases for 3 years comprised $132,524.40, in contradiction to the Court's "lost annual *profits*" totaling $132,747.

## III. LEGAL STANDARD

"Reconsideration is disfavored and appropriate only in rare circumstances. Motions for Reconsideration are not the place for parties to make new arguments not raised in their original briefs, nor should such motions be used to ask the Court to rethink its previous decision." *De Nunez v. Comm'r of Soc. Sec. Admin.*, Case No. CV-19-02593-PHX-SPL at*1 (D. Ariz. Oct. 27, 2020) (J. Logan) (internal quotes and citations omitted).

"The Court may grant a motion under Rule 59(e) if the district court is presented with newly discovered evidence, committed clear error, the initial decision was manifestly unjust, or there is an intervening change in controlling law." *Id*. (cleaned up).

A movant may establish clear error by showing "the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension." *Spider Labs Ltd. v. Doe*, Case No. MC-20-00039-PHX-SPL at * 2 (D. Ariz. Nov. 30, 2020) (J. Logan) (internal quotes and citations omitted).

## IV. ARGUMENT AND ANALYSIS

**A. It is manifestly unjust to infer without scrutiny or analysis that the Parties' disputed *method of compliance* comprised a *resistance to comply* with the Court's destruction order.**

When an order is not "exceptionally clear" and the Parties reasonably dispute the terms therein, rendering awards based on such circumstances is unjust. *See Finjan, Inc. v. ESET, LLC*, Case No.: 17CV183 CAB at *14-15 (S.D. Cal. Mar. 29, 2019).

Here, rather than dispute the order to destroy the designated furniture, the Parties merely disputed the proper manner in which the furniture could be destroyed.

1   Specifically, in response to the Plaintiff's motion to compel, Defendants asserted:

2   "Defendants have neither refused to comply with this Court's destruction order, nor have

3   they proposed unreasonable methods by which the order can be satisfied" after which

4   Defendants requested clarification from the Court. *See* Doc. 127 Part V.

5         Further, by volunteering its lack of expertise in furniture destruction and declining

6   to rule on the reasonableness of the Defendants' proposed methods of compliance, this

7   Court appears to acknowledge, at least in principle, that the manner(s) in which its

8   destruction order could be fulfilled was not exceptionally clear.

9         Yet by merely inferring from the Parties' narrowed dispute over how to destroy

10  the furniture that the Defendants had "resisted compliance" with its order, this Court

11  patently misunderstood the Defendants' position.

12        Additionally, the Defendants' full compliance with the Court's damage award and

13  injunctive orders, which apparently received no weighted consideration, indicate that the

14  Court clearly erred by concluding the Defendants had "resisted compliance." Thus, in

15  reliance on this error to award attorney's fees, this Court subjects the Defendants to

16  manifest injustice.

17        **B. This Court erred by presuming that Mr. Malhotra intended to profit from the Plaintiff's goodwill when he copied the Plaintiff's furniture.**

18

19        "Most of the cases that have given weight to copying have done so without

20  scrutiny or analysis. To derive secondary meaning from deliberate copying, the court

21  must forge a circular chain of inferences . . . [that] do not apply to many product design

22  cases." *Continental Lab. Products, Inc. v. Medax Intern.*, 114 F.Supp.2d 992, 1009-10

(S.D. Cal. 2000) (distinguishing *Audio Fidelity* and finding "[m]ore recent decisions have recognized that reasons unrelated to the exploitation of existing secondary meaning often drive a competitor to closely copy a mark or design.").

Rather, "[i]n the trade dress context, the Ninth Circuit . . . refus[es] to presume secondary meaning from evidence of deliberate copying." *Id*. at 1010 (*citing, e.g., Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 844-45 (9th Cir.1987)).

For example:

> [a] competitor may copy a product design . . . to exploit public demand, and have no knowledge of a secondary meaning and no intention of deceiving consumers . . . . Because of these alternative explanations, many courts have refused to infer secondary meaning from mere intentional copying. Instead, intentional copying supports a finding of secondary meaning only where the defendant intended to confuse consumers and pass off its product as the plaintiff's.

*Id*. (collecting cases); *accord Walker & Zanger, Inc. v. Paragon Industries, Inc.*, 549 F.Supp.2d 1168, 1181 (N.D. Cal. 2007) ("Proof of deliberate copying . . . does not necessarily establish an [intent] to confuse customers and capitalize on recognition of [the product.] Competitors may intentionally copy product features for a variety of reasons; [such as] in response to consumer preference.").

In a particularly relevant product design case involving the trade dress of furniture, the Northern District of California distinguished, inter-alia, this Court's use of *Audio Fidelity* as follows:

> Normally, proof of copying strongly supports an inference of secondary meaning. However, the case at bar differs in an important way from [*Audio Fidelity*]. **The latter case dealt with packaging, not the product itself**. When the trade dress, the mere packaging of a product, copies the packaging of another product, the [*Audio Fidelity*] rationale holds. **The**

RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT                               Page 7 of 10

> **instant case, on the other hand, deals with a trademark of a design. The piece of furniture is both the trademark and the product.**
>
> **Accordingly, a manufacturer might copy not because there is secondary meaning to capitalize upon, but because consumers desire that particular style in a furniture product.**

*Alphaville Design, Inc. v. Knoll, Inc.*, 627 F.Supp.2d 1121, 1130 (N.D. Cal. 2009) (distinguishing, inter alia, *Audio Fidelity*) (emphasis added).

Acknowledging that this Court is not bound by the rulings of its sister courts, Defendants submit that the case law cited herein at least shows that a furniture manufacturer can logically copy the overall appearance of a competitor's furniture without necessarily forming the intent to profit from any of the competitor's goodwill.

Further, even though it appears to misapprehend the purpose of the Defendant's arguments, this Court has at least acknowledged a portion of the Defendant's relevant evidence endeavoring to show that Mr. Malhotra: (1) copied the look and style of Plaintiff's furniture from a photograph at the specific request of a client; (2) knew such copying to be common among furniture manufacturers; (3) did not understand that the look or style of furniture could even be protected; and (4) never attempted to mislead a consumer or vendor as to the sources of the Parties' respective furniture.

Consequently, this Court erred when it presumed that Defendants had intended to copy the Plaintiff's goodwill merely by copying its furniture. Such a presumption both misapprehends the purpose of Defendants' submitted evidence and does not consider the more current and relevant case law.

Alternatively, by holding a judicial presumption of intent against the Defendants without fully considering the Defendants' counter-evidence—and awarding damages and fees therefrom—this Court subjects the Defendants to a manifest injustice.

### C. The newly discovered affidavit of Ben Aufill compels the Court to deny Plaintiff's damages with respect to Coyote Candle.

Due at least in part to Mr. Aufill's clear reluctance to become involved in this lawsuit the Parties did not have a reasonable opportunity to present this Court with any of Mr. Aufill's direct testimony—each Party relaying instead their interpretations on their respective experiences with with Mr. Aufill.

Yet when Mr. Aufill subsequently learned that because he remained uninvolved in the lawsuit the Court ordered the Defendants to pay the Plaintiff's damages for lost sales to Coyote Candle, he volunteered his direct testimony so that the Court can reconsider.

According to this direct testimony, not reasonably discovered before trial because Mr. Aufill, a non-party, declined to volunteer it, any suggestion that Coyote Candle decreased furniture purchases from the Plaintiff because of this lawsuit is untrue, and that for this Court to rule otherwise in favor of the Plaintiff is manifestly unjust. The new testimony also indicates that the Plaintiff's calculated lost "profits" are more likely lost sales.

Thus, the strong opinions stated by Mr. Aufil in his newly discovered affidavit compel the Court to deny Plaintiff's damage with respect to Coyote Candle or, alternatively, to adjust the calculated award to more accurately reflect the Plaintiff's actual lost profits, rather than its lost sales.

## V. CONCLUSION

As shown above, the Court inferred Defendant's "resisted compliance" with judicial orders and implied the Defendants' intent to profit from the secondary meaning of the Plaintiff's trade dress without engaging in the necessary scrutiny or analysis to avoid clear error or manifest injustice.

Therefore, Defendants respectfully request that the Court provide such scrutiny and analysis as is required to properly consider whether the Defendant's resisted compliance and whether Mr. Malhotra formed the intent to profit from the Plaintiff's goodwill as a separate issue from his intent to deliberately copy the Plaintiff's trade dress.

Further, newly discovered affidavit testimony by Mr. Aufil also compels the Court to reconsider its award of damages with respect to Coyote Candle.

Consequently, Defendants request that this Court alter or amend its judgment, particularly its decision to award damages and fees, in accordance with these fully considered issues and newly discovered evidence.

DATED this 5th of April 2021:

By:   /Brandon J. Leavitt
Brandon James Leavitt
Texas Bar Number: 24078841

4204 SW Green Oaks Blvd. Suite 140
Arlington, TX 76017
Telephone: (214) 727-2055
brandon@uslawpros.com

**ATTORNEY FOR DEFENDANTS**

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure on this the 5th of April, 2021.

Thomas E Dietrich
FortressGC, Pllc
1811 N. Turquoise Dr. Flagstaff, AZ 86001
Tel. 520.404.1713
tom@fortressgc.com

By: /Brandon J. Leavitt/
Brandon James Leavitt

**Attorney for Defendants**